Case number 12-6458, Ryan-Scola v. Publix Super Markets Incorporated. Articles No. 15-55, Ms. Daniel for the appellate, and Ms. Piscica. May it please the court, I'm Grace Daniel, and I'm here on behalf of the plaintiff, Lane-Scola. And I would like to reserve five minutes for rebuttal, please. You may. Your Honor, in this case, of course, it's an age discrimination case out of Chattanooga. Judge Collier presided over this case. We initially take issue with, of course, his grant of summary judgment. Our claims under the federal age discrimination statute and under the Tennessee statute are governed by two different standards. At this time, when this case was filed, we were still in Tennessee under the Hannon v. Altec standard. Under that standard, the court does not engage in the McDonnell-Douglas analysis that Judge Collier engaged in here. Of course, under the federal standard, that is allowed. But we had several claims under this failure to promote case. It's age discrimination, but based on numerous failures to promote because my client was employed there in 2008. And she was still employed there when the case came up for trial in 2012. And there were eight individuals, eight employees, who had already been promoted at that time over her. My client was basically employed when the store opened. These other individuals were much younger than my client. There was one employee, Marcia Trumbull, who the court found that there was not a significant difference in her age. It was a difference of seven years, and Judge Collier relied on basically the eight-year standard rather than the Grosjean case, which held a seven-year standard. We also, of course, had claims of hostile work environment and then state law claims of negligent infliction and intentional infliction of emotional distress. The defendants did not raise any issue as to our claim of hostile work environment in their motion for summary judgment. So when I filed my reply, I stated that that claim had not been raised, even though they were filing a motion for summary judgment, not for partial summary judgment. But the trial court went ahead and addressed that claim, that hostile work environment claim. The issue we have with that is the elements to prove an age discrimination claim under the Tennessee Human Rights Act or the federal statute, it's very different from a hostile work environment claim. Under an age discrimination claim, of course, you have to show that they were within a protected class and that the plaintiff was qualified for the position that she applied for and was denied that position and that a younger person was placed in the position. In this case, Judge Collier found that all of the elements were met except for that fourth element. And he, at that point, engaged in the same analysis for both the Tennessee human rights claims and the federal statute claims on these different individuals who were younger than my client and put in the position. There were two individuals that he found under the Tennessee human rights claim, Anderson and Cordell, who were much younger, and there was no issue that, in fact, there was a significant difference in their ages. The only individual that Judge Collier found did not have a significant difference in age was Marsha Trumbull. Counsel, help me here on the facts. As I understand it, it's true that Trumbull, we have this six-, seven-, eight-year issue, but I thought Trumbull and Pendous were both people who had been CSSs at some previous time and Anderson and Cordell had been CSSs in some other location. So in terms of the legitimate nondiscriminatory reason, do we really need to treat Trumbull separately, either say that these are sufficient reasons or they're not? Because when I was looking at it, it didn't seem to me that the Trumbull issue really stood alone very much, that your case rises and falls on your client versus these other people. Yes, Your Honor. Well, it's our position that with regard to Anderson and Cordell, the court found that they did have viable claims under the Tennessee Human Rights Act. So therefore, you wouldn't even reach the McDonnell-Douglas analysis with regard to those two individuals. And that's where we take issue because we feel like the district court went too far and started this analysis, well, even though there's a significant difference in their age, they were more experienced than my client. And he starts getting into the different qualifications of my client versus these other two individuals. But under the Hannon-Altec standard, it's our position that all we have to show is that these individuals were younger than the plaintiff to meet a promofacia case of discrimination. But, of course, Judge Collier analyzed both under the same standard, so he goes ahead and looks at Cordell and Anderson and their qualifications. And what was the reason that he did that? Well, Your Honor, he was proceeding under the McDonnell-Douglas standard, is my belief, with regard to Cordell and Anderson. But they had claims under the Tennessee Human Rights Act, so their claims should have been analyzed under the Hannon-Altec standard, not under the federal summary judgment standard. Didn't the Tennessee legislature change all that? It wasn't until after the fact, Your Honor, but this case was filed before that statute was enacted. So this case still proceeds under the Hannon case. Well, we held that. I mean, sort of as I understood it was that the legislative action was such that we have recognized that the state of the law throughout would be that the McDonnell-Douglas standard prevailed. Do you have a court that says that there's a date on which you change your standard? Your Honor, it's my understanding that the statute actually provides that date, and I think it was sometime in July of—I cannot remember the exact date. But it was filed—this case was filed before that date. It was filed, but it was decided afterwards. I mean, this is not like the creation of a cause of action, where you have a cause of action that's created and then later abolished. Here you're talking about how you operate an area of law. So the question would seem to be what's the state of the law at the time the judge decides the case because it's a procedural issue. Well, and, Your Honor, I understand, but I believe the statute specifically states that it only applies to cases filed after a specific date, is my recollection. And I believe that's cited in one of the cases in my brief. And this case was filed before that enactment, but that is provided specifically in the statute. So if this case is analyzed, at least the Tennessee Human Rights Act claim are analyzed under Hannon, you don't get into the analysis that Judge Collier did with regard to my client's attitude, her performance, whether she was more qualified or not qualified than Anderson or Cordell. But even if that standard had applied, and the fact that it does to several other individuals, the court decided that based on my client's lack of experience, that under the McDonnell-Douglas standard, she could not meet her burden of proof. He focused on experience, but the decision maker in this case, who was a store manager, Mr. Walker, testified that he did not promote my client first, he said, because there was no need, even though he had promoted eight other individuals. And then he came back later in his testimony and said it was because of my client's lack of availability. But there's a dispute of material fact here, because there were several CSSs who were put in that position who had limited availability. One was in school, and she was given special preference because she was a student. Another one, I think, had young children at home, and she was given special preference for that reason. And there's also testimony from other managers in the record that you did not have to have unlimited availability. That was not a requirement for this position. When my client was instructed that that was a requirement for the position, she immediately changed her availability to unlimited, even though she was still in a part-time cashier position. Part-time cashiers, there's like 30 of them that work at each store. They can pretty much set their own hours. They're not required to have a certain type of availability. But this particular manager was putting additional requirements on my client that she would... Counsel, I think your time has expired. Yes, thank you. And let's move on to any further questions. Thank you. You'll have your time for rebuttal. Thank you. May it please the Court, Elizabeth Washko for Publix. This case is about a disgruntled employee who didn't get a lateral position that she wanted. The district court did not agree with us on it being a lateral position, but I do want to address that because I do think that was a mistake. The position of moving from a part-time cashier to a customer service staff person had no change in pay, no change in benefits. The only difference was some additional tasks that she could do. Would it also mean more hours because you just called it part-time cashier? She was a part-time cashier. The CSS position could be either part-time or full-time. There was no specification for that. The people that were chosen over her, in some cases chosen over her, in some cases there really wasn't a decision because they were transferred in from another store not to fill an available spot but to accommodate those particular employees' needs to transfer. The evidence is not that availability was the only issue, but that they were selected over her based on their experience, their attitude, their demeanor, their performance, and availability. When we talk about availability, Ms. Scola wants to rely on the absolute minimum qualifications for the position. She was 18 years old. She did have cashier experience. Those are the minimum qualifications. Many people in the store would have met that criteria, but they're not all entitled to be moved to this position that she wanted. And what Ms. Scola did, sort of in the nature of a rebellious teenager, if you move my curfew, then I'll start doing my homework and I'll start performing well. Whereas what Publix wanted her to do is act like the position that you want, show us that you're available, show us that you're a go-getter, show us that you really want this position, and she refused to do that. She had constant limitations on her availability for weeks at a time. We're not talking about somebody who has a school schedule, a class schedule that they're unavailable three mornings a week. She would be asked to be off for several weeks at a time for different months throughout the time period. And her response to that is, well, if you give me what I want, then I'll change my availability. I'll be available, but that's really not how it works. So as an employer, you have three people who meet the minimum qualifications. You are entitled, as a matter of law, to evaluate those people, to compare them, and that's the step four of the prima facie case where Judge Collier concluded she failed to meet. When you compared Ms. Scola's overall qualifications, not that she was 18 and a cashier, but what she had to offer compared to the other folks, they were better suited. What about this change of standard as far as the Tennessee Human Rights Act is concerned? Does the statute specifically say that the change only applies retrospectively? I looked at that last night. I looked at the statute. I didn't see anything in the statute that said it applied retrospectively or only as of a certain date. But what I will say is that that has never been the law in the federal court. We're talking about a procedural Rule 56 for what the summary judgment standard is. The Altell and Hannon cases were not about THRA and discrimination specifically. I think one of them was about a retaliatory discharge case, but they were talking about the Tennessee Rule 56 and the procedure under that and what standards they would apply. The district courts in this circuit and this court, actually, in applying summary judgment to Tennessee Human Rights Act claims, even during the period when Hannon and Altell were in effect, applied the federal standard, applied the McDonnell-Douglas standard that Judge Collier applied. My understanding was that the whole conflict occurred when the Tennessee courts in Gossett said McDonnell-Douglas didn't apply, so you actually have a fairly small window during which this problem arises between the Gossett case in 2010 and the statute in 2012. None of that changed the language of the Tennessee Human Rights Act. Is that correct? That's correct. It had no change on that. It was merely addressing how the summary judgment procedure in Tennessee courts, not just applicable to the Tennessee Human Rights Act, but to other types of employment claims, how that standard would be applied. And this court and the courts in this circuit have, even during that window, applied the federal standard to the cases involving Tennessee Human Rights Act claims. The plaintiff has not cited to a single case that has held that a Tennessee Human Rights Act claim being addressed by a federal court has to apply the Gossett or the Hannon or the Altell standards, even during the period of time when that was the standard for Tennessee courts. This court is not bound by that. Right. What about, I mean, on this issue of whether there was the seven years and age difference, Ms. Trumbull was 50, Ms. Scola was 57, and I gather there's sort of a little bit of a gray area of whether that's close enough or not. I mean, we've got cases that say, hey, if it's only six years difference and you've got two people in the protected plus 40, that's okay. If it's 10 years, it's presumably not okay. Eight years might be, but seven, we don't really know. Right. Well, and I think with the case laws, I think you're right. There's a very clear bright line at six, and there's a going that's not significant, very clear bright line at 10. It is significant, and then it's gray in between. But what matters for that in between is whether there's any other evidence of age discrimination, and there isn't here. Well, we've got, what, Mr. Hall saying, hey, old lady, old lady, five times. Mr. Hall made apparently five comments over a two-year period to her. Mr. Hall had absolutely nothing to do with any of the decisions relating to Ms. Scola's employment. He did not have any role in the decisions to place people in the CSS position, to place, to allow people to transfer into that position, to rehire Ms. Trumbull into that position. He had absolutely nothing to do with it. So, and he's the only one alleged to have made any comment like that. And the first, very first time she ever complained about it, it stopped. The last time he made such a comment was around the time that she made her complaint. I think it was February or March of 2010 to Human Resources. And again, he had absolutely nothing to do with it. So, Judge Collier looked at that too and said, well, it's seven years, but there's nothing else here that's indicia of age discrimination. It's just, that's Ms. Scola's belief, but there's no evidence to support that. The people that made the decisions absolutely, in fact, in her deposition testified, no, I don't think that Todd Walker would discriminate against me based on my age. He's the store manager. I don't think that, she didn't think that other people would discriminate against her, other than Mr. Hall, as I said, who had nothing to do with the decisions. With regard to the issues relating to the claims that were asserted in the complaint, the plaintiff, if you look at the complaint, it is very clearly, simply about age discrimination with regard to promotion. She does mention that Mr. Hall made some comments to her. But the other claims that she's now claimed contending are part of the case, hostile work environment, intentional infliction of emotional distress, these other state tort claims are not in her complaint. Those words are in there. Just the words negligent infliction of emotional distress are in there. But there's absolutely nothing that would satisfy any basic pleading standard to put us on notice that those were claims in this case. In fact, from the beginning, she says this is an action under Title VII, which was incorrect, under the ADA for age discrimination. That's how she defines her claims in this case. And she sort of throws these other things in there. What about the hostile work environment? Is that part of Title VII? It's still, I mean, it's, the words are in there, but she doesn't allege any of the basic facts that would be required under ICFO and Twombly to even support that kind of a claim. But the truth is, even if you take, even if you did assume that she correctly pled that, she didn't support that with any evidence. The evidence to support her hostile work environment claim is Mr. Hall's five statements that had ended by February or March of 2010, and her failure to be promoted. And the case law on that is pretty clear, that you can't take your disparate treatment claim on a particular issue, like a failure to promote or a failure to get some sort of employment benefit that you want, and then put that in the mix and say, oh, that's a hostile work environment. That's not part of a hostile work environment claim. That's a separate claim. So really what she's left with is, over two years, Isaiah Hall said old lady and asked her if she knew a song from the 50s and 60s on five occasions, and that just doesn't meet the standard for a hostile work environment, even if she had properly pled it, which she did not. So, in conclusion, we would ask that the court affirm Judge Collier's decision, dismiss the case, or, sorry, affirm the dismissal of the case on summary judgment of the plaintiff, although she attempted to create disputes of fact with a lot of inadmissible evidence and things like that, really did not do so, because when it comes down to it, she could not prove that one of the key elements of her claim, which is that she was as qualified or more qualified than those who got the position that she wanted. It's simply not the case. There's no dispute that those folks had better experience, availability, performance, demeanor, as viewed by their management. Thank you. Thank you, Counsel. Yes, and, Your Honors, I did find that case. It was on page 17 of my brief, and it was the Scan v. Federal Express Corporation, a Tennessee Appeal 2012 case, and it cites the Hannon v. Alltech, which rejects the McDonnell-Douglas framework at the summary judgment stage in discriminatory and retaliatory discharge cases and applying the standard in Hannon. And there's also a footnote to that case, footnote four, which states, the General Assembly has enacted legislation providing for a different summary judgment standard than the standard set forth in both Gossett's and Hannon, but the new statutes only apply to cases filed on or after June 10, 2011, and July 1, 2011, respectively, referring to TCA 421.311e and 51.304. Our case was filed in April of 2011. So clearly, based on Tennessee law, we would apply the Hannon standard here. Would we, though, or would that just apply in the state court? This is a procedural rule, and the federal rules of civil procedure would apply. Well, Your Honor, but it's involving a claim under the Tennessee Human Rights Act. I would agree with that with regard to the claim under the federal statute. But, for example, if you had a state which says, in general, in our civil cases, we don't buy all of this Mitsubishi trilogy and so on. We don't believe in summary judgment much. Even if it was a state law claim, the federal courts would still apply the new summary judgment standard, wouldn't they? I mean, a state can't say we're going to change the federal rules of how you do summary judgment. Well, Your Honor, but if you have a specific, I guess, decision, Tennessee decision, which is addressing a Tennessee statute, it seems like it would undermine the Tennessee statute and the purpose and intent of that statute if you apply the federal standard, even if it's in federal court. Well, say somebody brings a Rule 12b-6 motion for failure to state a claim, and some of those claims are state claims. You're saying we couldn't apply Rule 12b-6 to state claims? Well, Your Honor, I just think this is a different situation when you have a Tennessee statute. It's not just a procedural rule, Tennessee rules of civil procedure. You actually have a statute here which states that this standard is only going to apply prospectively. But the Gossett case, which is what the statute abrogated, was itself a procedural decision, wasn't it? I mean, it didn't say that Tennessee human rights law means something different from Title VII. It was about how you would apply summary judgment in the Tennessee courts. And that is true, Your Honor, but then you have a statute that comes along later and said this is the new standard, but it's only going to apply prospectively. I just think there's a difference there when you have a statute. But also, even if you apply the McDonnell-Douglas framework here, the court was deciding facts. These were disputed issues of fact that should be construed in favor of the plaintiff. The decisionmaker wasn't even looking at experience. That wasn't the reason why the decisionmaker denied the promotion. He said it was because there was, quote, no need for anyone in the position, which was clearly not true. He had already put eight people in that position. And also, all he focused on was availability. I read his definition. I think he had a little broader comment to that. Well, there were other supervisors who did, but they were not the decisionmakers. And the judge referred to those different citations to the depositions, but they were not the decisionmaker. If you look at Todd Walker's testimony, he focused on availability, yet there was no requirement for availability. So I think the plaintiff has refuted that. Even if he uses that as a legitimate, nondiscriminatory reason, well, if you're talking about availability, then why do you have two other people here who the defense have already admitted they have some who are part-time? Well, how can you have unlimited availability if you have someone who only works part-time, if you have two other younger employees who are given accommodations for either college or family reasons, but yet my client, who is still a part-time cashier, she's not even been put in that position yet of a CSS, and yet she's required to have unlimited availability? I mean, that's an unreasonable standard. Nobody else in that position as a part-time cashier were required to have, during their time as a cashier, unlimited availability until they reached that position. If there was no change in pay or anything else, why is this not a lateral decision? Well, it is a change in pay. In fact, the judge found it was a, quote, promotion. That was the only reason he could find that we met those first three elements on the prima facie case, that it was. It was an increase, and it's in the record. It was an increase in responsibility. It was an increase in pay, and it was also considered a supervisory position. The CSSs supervised the cashiers and the baggers, and there was also testimony that you had to be, if you were going for a management position, that was the next step for management, which my client wanted, was to become a CSS. And the first level management position was as an assistant customer service manager, which you have the customer service assistant and the customer service manager. And she needed to go through that progression, but she could never even get to a CSS, and obviously this was not a very skilled position. She had ran her own travel business for many years. It was like 18 years. Counsel, I think your time has expired. Thank you, Your Honors. Thank you. Questions? That case will be submitted, and the clerk will be adjourned in court.